Bumper v. District Watch No. 751 in Boeing. Good morning, Your Honors. Dimitri Glitzen Shereen Campbell Bernard, representing the International Association of Machinists and Aerospace Workers, District Lodge 751, Council for the Individual Plaintiffs in this case has graciously allowed me some time to speak. First, I'd like to take approximately eight minutes. Council for the Plaintiffs, approximately five minutes. We'd like to reserve whatever turns out to be remaining at that point as rebuttal. The only rule we consistently follow is only one person gets to rebut. That's fine. Thank you very much. I expect I'll be doing the rebuttal. The reason that I'm addressing the three of you today is that the underlying legal issues, the preemption issues, there seems to be a mourning for preemption issues, is of vital importance to the International Association of Machinists, District Lodge 751, because we represent 20,000 employees of the Boeing Company under the collective bargaining agreement, specifically at issue in this case. I will not re-argue what I've argued in the amicus brief. There has been no response by Boeing to that brief in writing that I'm aware of. This court set forth in the humble decision very clear guidelines on the test for preemption. What I want to talk about is why this is so important to District Lodge 751. To talk about that, it's important to think about what the role of the union is. Unions exist to bargain contracts collectively on behalf of our members. We sit down with employers and we bargain multi-year collective bargaining agreements which set forth wage rates and working conditions for our members and represented employees. Then our role is to enforce those contracts. If members complain or if we see that in this case Boeing, for example, is not obeying that contract, we file grievances or we pursue to administer that contract. We do not exist to enforce or investigate state law, statutory rights, the right all employees have, all workers have, to not be discriminated against based on their race, their gender, their age, their disability, or the other very well-known statutory rights. There are elaborate both federal and state statutory schemes to protect workers against those types of invidious discrimination. The union cannot assume the obligation, which is what preemption would essentially mean, is to say that the union has to investigate and pursue any claim of race discrimination, sex discrimination, disability discrimination. Moreover, it's not fair to, please. If Humble has decided this question, and has decided this question, we don't really need to go into the reasons why we should, why we were right the first time. So I guess the real question is, does Humble decide this question? Well, we certainly believe it does. There's only one twist in this case that we see, and it really needs to be addressed. Humble says that there are three ways that a state statutory claim might be preempted. If the plaintiff's claim is derived from the collective bargaining agreement, which basically means based on it. If a plaintiff says the company violated the collective bargaining agreement, then it's preempted, and the plaintiffs here clearly don't. The third area is if the, there is a defense that the company can bring based on the collective bargaining agreement, and Humble makes it clear that in disability discrimination anyway, where intent is not an issue, there is no defense. The company can't respond to a claim. Kagan-Cramer, that defenses don't count? Defenses might, in Humble we said, I think it's unclear. In Humble, the Court said, well, there's clearly no defense on collective bargaining agreement to a disability discrimination case. In Humble, the Court said it might be that under State law, it's a defense to a company accused of an intentional act. I need to, I'm sorry. Humble. Defensive use of the CBA to trigger preemption. Barwing argues that it's relying on the CBA. This argument is unavailing after Cramer. So it seems to me that's unavailable. Oh, in Humble, there is a suggestion, and it's been made before, that if under State law, you can respond to race discrimination by saying, well, look, we followed our contract. Therefore, that tends to rebut and inference a racial discrimination. But it's not before us. It's clearly no defense to disability discrimination that we followed our contract. So the only remaining interesting aspect of preemption is that the contract is so intertwined with the claim that it has to be interpreted. And what Boeing has said in this case is the following. It is a defense against disability discrimination that we followed our own corporate company policies. Our company policies have to be interpreted to defend against the disability discrimination, to understand the disability discrimination claim. And our company policies are so intertwined with our collective bargaining agreement as to make the whole thing preempted. And as we suggest in the brief, it just doesn't the number of hurdles that Boeing would have to get through fails to meet the test set forth in Humble, and I'm quoting, that any interpretation of the CBA's provisions be necessarily subject to interpretation. Because what Boeing would have to show is that its company policies were ambiguous, had to be interpreted to defend against disability discrimination, and that to understand those policies, you would have to not only refer to but interpret an ambiguous collective bargaining agreement provision. And there is no authority that suggests that a company can go through those hoops and establish that, therefore, a claim which is not based on a collective bargaining agreement, that's not even based on the company policies, is somehow preempted. And the problem, of course, is that companies promulgate all kinds of policies unilaterally and have the right to do that. And the bottom line is that Boeing is attempting to create, would be attempting to create in this. Yeah. The fact that in a plant that is, in which there is a union, they only have the right to do that if it's either not a matter of collective bargaining or the union has given them the right to do that. Right. And I knew, as soon as I said they could do it unilaterally, I knew you were going to point that out. I guess what I should say is, as a practical matter, companies sign collective bargaining agreements, and then they have internal human resources policies. Now, it may well be that in a particular incident, the union will say, well, that policy conflicts with some right we have under the collective bargaining agreement. It's mandatory subject to bargaining. We want to bargain about it. That's right. Or. The scope of three-on-one preemption doesn't pertain to what could be bargained but only what was bargained. That's correct. Well, no, I guess that's a larger question that I would hesitate to even go into. I'm more comfortable just saying that if, in a case like this, Boeing has internal policies dealing with how it evaluates people with medical disabilities, if it follows through on those policies in a way that violates the collective bargaining agreement and part of that discussion might be whether the union had somehow acquiesced in the promulgation of those company policies, that becomes an issue about the employee's rights under the collective bargaining agreement. But what's important here is the plaintiffs did not bring a lawsuit saying the company violated even the company's own policies, much less that the company. There is. It's pointed out at times in the briefs and the complaints that there may have been inconsistent with the company's own policies. And I think that's where this argument is coming from. Right. That a company may have acted inconsistently with its own policies. The question is, if, at what point do allegations of that kind turn into an allegation of violations of policy? Go ahead. Answer that, and then you're done. All right. And I think that if the response from Boeing is, well, no, we did act consistently with our policies, there's clearly no contractual issue. What Boeing would have to say is, to prove that we acted consistently with our policies, you have to not only refer to, but necessarily interpret something in the collective bargaining agreement. And there's simply no evidence in this record that the policies themselves are ambiguous, much less that, to understand them, you have to refer to an ambiguous provision of the collective bargaining agreement. Let's hear from your co-counsel. Thank you. Counsel for the employee. Talk to us, please. Thank you. Counsel? Good morning, Your Honor. Good morning. My name is Uche Kumolo. I'm going to try to speak slowly. I have an accent. It's kind of hard to hear me sometimes. So I'm going to be up all night. I'm nervous. I'm going to talk about the issue of emotional distress, I believe. The issue of what? Emotional distress. All right. I'll try to enunciate that, too. I was going to ask you whether that was still in the case, and as a stand-alone claim. And apparently your answer is it is. It is still in the case, and that was part of what was dismissed. And it doesn't make sense why they dismissed it. Now, the question we have, the question I'm going to talk about is when you talk about the emotional distress as it relates to RCW 4960, which is the Washington Law Against Discrimination, the fundamental issue they raised at the district court level is that we did not provide facts to substantiate our claim for emotional distress. Do you have a freestanding claim for emotional distress, or do you have emotional distress damages based on Washington? We have an emotional distress claim based on Washington Law Against Discrimination. We did not file in a — A standing motion. No, we did not. No, we did not. And the way I read the RCW, the Washington Law Against Discrimination, is it's almost assumed that when you discriminate on a race, age, gender, religion, that there will be consequences, humiliation, mental anguish, that generally flows from those kinds of discrimination. Okay, so what you are — pardon me. So what you are saying is that you're contending that your discrimination claim has not been preempted, and that you want to go forward on that claim, and as part of the remedies for that claim, you want to recover for emotional distress. Correct. And you're telling us that you can do that under Washington law in a discrimination claim. Is that correct? Correct, Your Honor. So it doesn't really make any difference to what you can recover, whether the district court did or did not dismiss your stand-alone claim. Correct. You're going to recover anyway if you can go forward on your discrimination claim. Correct, Your Honor. And we don't need to establish the general intentional outrage standards, because all we need to do at the very minimum is to find discrimination. My client did put into effect, into the record, information through their declaration that suggests that they suffered some humiliation. They couldn't pay their mortgages. Their insurance was — their medical insurance was at the very minimum taken away. Some have already had foreclosure proceeding against them. Some have lost their homes. Those that stand that type of emotional distress claim now come from a discrimination. In any event, it would be very odd to preempt a remedy if the cause of action is going forward. Is Boeing arguing that, or are they arguing only with regard to a stand-alone claim? Well, they argue that, too. I mean, the argument is we needed to, I guess, provide what you call an expert in the usual, you know, intentional type emotional outrage where you're standing alone. You need to go through the rigmarole of having an expert appointed and go through providing that. That's what their argument is. And we beg to disagree on that, that our claim is basically tied to the discrimination. The very minimum we need to meet is to find discrimination. Then as the judge — pardon if I don't know everybody's name, but as the judge asked eloquently, if we need that burden of discrimination, assuming this court sends this case back, say, look, there's no preemption, then all we need to provide, at the very minimum, my client can testify, you know, that yes, this is what we went through. Therefore, we should be able to recover for it. And I believe that is the way I read Washington law against discrimination on negligent emotional distress claims. I don't know anywhere else to read it that wouldn't be consistent with. And the other thing we talked about is, again, the wrongful discharge. And it's very clear that Washington has enunciated a rule under the 4960, making it illegal, prohibiting, making it illegal to discriminate based on age, on gender, on religion. That alone is a public policy. In my 22 years of living in America, there is nothing that is so self-evident that you cannot discriminate, period. So why do you need that? Again, isn't it all, if you succeed under Washington law against discrimination, are there emotional distress damages available? Hold on. I didn't catch your question. There are emotional distress damages available for the Washington law against discrimination. That is tied. So why do you need a separate wrongful termination clause, actually? Well, again, I just, for the sake of argument, I just wanted to point out that when the case was dismissed, it's all tied up in one. So I guess you could say if the first wrong is corrected, then everything is tied up, tied up together, and then we can proceed to the next phase, which is to try the case. Thank you, Your Honor. Any more questions for me? I don't see any. You have about five and a half minutes for rebuttal. I'll let this Englishman review. That would be fine. Thank you. We'll hear from Boeing at this time. Is it Mr. Smith? Yes. Good morning. My name is Paul Smith. I do apologize. I had submitted a substitution of counsel to the clerk's office in San Francisco, but I neglected to do so to the Seattle Calendaring Unit. Don't be concerned. We're right at hand. There are, of course, three plaintiffs in this case. Each was a former hourly employee at Boeing's Spokane plant. Each received a medical layoff as provided for under the terms of the collective bargaining agreement that governed the terms and conditions of their employment. Each of them filed a lawsuit against Boeing. Those lawsuits were ultimately consolidated into one. We're here today. One point I want to address right at the outset because I do think it merits some clarification. Looking at each of those three complaints, there are three distinct causes of action that are pleaded. There is this Washington law against discrimination reasonable accommodation claim, but there is also a claim for negligent infliction of emotional distress, which is a court I'm sure is well aware of, a tort that's recognized under Washington law. And thirdly, there is a tort claim for wrongful termination. It's not a statutory claim. It's specifically pleaded in the complaint. I was just double-checking one of them, but it's in all three. It's a tort claim for wrongful termination. And the lumper complaint, which is the one I was just looking at, those causes of action are supplemental excerpts of records 12 through 14. And this becomes important because preemption is not just a basis for potentially dismissing one or more of these claims, but it's also, in this case, the basis for this court's jurisdiction. In other words, the only reason why we're even in federal court is because of preemption. On the face of the complaint, each of those complaints, each of those causes of action is a state law cause of action. And I mention that because even if the court does ultimately determine that the humble decision is controlling here and means that the Washington law against discrimination claim is not preempted, and I'm not conceding that point. I want to get into that more in a minute. But if that is the direction the court ends up going, then the question is not only, well, is there any other basis for dismissing that claim, but is there even jurisdiction at all? I would submit that, yes, there is, because the other two claims, the state tort law claims, are clearly are preempted. And one thing that's sort of an interesting twist on the humble case, when you go looking back and go and look at it, it has sort of a similar posture. It was a Washington law against discrimination claim, but also a separate tort claim for negligent infliction of emotional distress. It actually had an outrage and a negligent infliction, so an intentional and a negligent. And what the humble court did, the bottom line is, yes, the case was remanded, but it was not remanded with instructions to go back to state court. It was just remanded back to the district court to sort this out, because there was still potential jurisdiction because of the outrage claim being preempted. I would submit that, although humble obviously — Well, okay. Okay. Yeah, I was not aware until just the comments here in oral argument that either of those had been abandoned. But obviously if they have, that does change everything. But if they have not been abandoned, then — The district court dismissed that claim on the basis of a lack of proof, right? Yeah, that's correct. And they don't — there's nothing in the briefs about that. I guess that — I think that is right that the parties did not address that in the briefing. They didn't, and certainly because they didn't, you weren't required to. That's right. I think Judge Verzone is right. Excuse me. Pardon me. Were you just speaking of the negligent infliction of emotional distress claim? Yes. Or the wrongful — or the wrongful discharge claim? I don't know about the wrongful discharge claim. I believe, Judge Thompson, we were talking about the negligent infliction of emotional distress claim. I thought so, too. And I kind of understand that aspect of it. But what about the wrongful discharge claim? You say, Mr. Smith, that there was a separate stand-alone claim for wrongful discharge asserted at least in maybe all three or one of the three claims by these plaintiffs. And I think what you're saying is that the district court held that was preempted, I think. And if that claim — and if we agree that is preempted by the collected bargaining agreement, then you're saying that there would then be, what, federal court jurisdiction to deal with that claim? There would be federal court jurisdiction to deal with that claim, although it may be somewhat moved because if it is preempted, there is a second step of the analysis. It gets converted to a federal claim, but as a federal claim, it probably has problems and ends up getting dismissed. But what it does mean is a supplemental jurisdiction under 281367 to then address the Washington law discrimination claim. All right. So Judge Nielsen, we could send this back to Judge Nielsen and he could address the Washington law. But you — this only would make any sense if there were a difference of any substance between the wrongful termination claim and the Washington law discrimination claim that would support preemption in one case and not in the other. Do you want to address that? I'm not sure I see what that would be. Well — And why isn't your opponent right that they both stand or fall together, essentially? It is hard to know exactly what the basis is of a plaintiff's tort claim of wrongful discharge, but that is the way it's pleaded in the complaint. And one has to surmise — Mr. Smith, if I may, it seems to me that the wrongful discharge claim is subsumed within the state law discrimination claim, which I think is the same thing that Judge Berzon was indicating, and that's what I gleaned from the argument of your opponent. If it is subsumed within the discrimination claim, then — and if we were to determine that Humble controls this case and, therefore, the discrimination claim has not been preempted, then we would presumably remand to the district court. And what would the district court then do? Say there was no jurisdiction because there was simply a state law claim and send it back to state court? Yes, I believe that would be the only option the district court would have at that point because then there really is no — there really — what the court would be holding is there really was never Federal jurisdiction in the first place because the only thing — Okay. You don't want any of that to happen, so go ahead with your argument. Getting back to Judge Berzon's question about are they the same or not, well, it's pleaded in the complaint as a tort claim. And that's just one word. It's a very significant word. I mean, I take it from that that it's not a statutory claim. Now, maybe the way it's evolved, they've abandoned that. They're abandoning it as a tort claim. But if it is a tort claim, the only tort claim it can be is, that I'm aware of, under Washington law, is a wrongful termination in violation of public policy. That's the only sort of — Public policy being the Washington law against discrimination? You're backing the same class again? Well, perhaps there's some other public policy that's at stake here. I mean, otherwise, it does seem, why did they plead it in the first place? And maybe it is getting a little bit circular here, but they pleaded a separate claim, a tort of wrongful discharge. And I'm — The fact that we're spending so much time on this suggests that you're close to conceding on the main part of the case. Well, let me — why don't I turn to that, though, because I think that is probably the main event here. I'm not conceding it, and although it's — you know, honestly, it's a tough situation where we've had a decision and then an intervening case by this Court that addressed the same collective bargaining agreement, same employer, same kind of claim. But I do think it's distinguishable, and here's why. The Humble Court said that one of the key reasons the Humble Court said there was preemption is that the contract was only potentially implicated, hypothetically implicated. And that's because in the posture of a Humble case, there was a motion for remand that came as soon as the case was removed to Federal court. That remand motion was denied. The Court held there was preemption, Boeing then immediately moved for summary judgment and got it. But the record was not developed at all, and it was hard to tell what sort of reasonable accommodation the plaintiff wanted there. And so the Court in Humble said, look, there's all sorts of different ways a plaintiff — an employee can be accommodated. Some of them may implicate the collective bargaining agreement, but others don't. And we're not going to hold that there's preemption based on the mere potentiality or hypothetical nature of it. This case is very different because the record is fully developed. There was extensive discovery in all the cases, summary judgment motion at the close of discovery, extensive briefing on both sides. And it's clear by the time you get through the complaint, the discovery, and the summary judgment motion that the plaintiffs here were seeking another job at Boeing. That's the accommodation they wanted. They wanted to either get reassigned in Spokane or they wanted to get reassigned somewhere else in the Boeing — in the world of Boeing. This was a reassignment case. They weren't trying to argue they could do their jobs. In fact, it was undisputed in the record that their physicians looked at a job analysis of their existing job and said, no, they can't do these jobs. So the — so the — in this case, we're looking simply at reassignment. And reassignment is governed by the collective bargaining agreement. And, moreover, it's not going to require merely referring to or consulting the collective bargaining agreement. That was the other concern that the Humble Court had. The Humble Court really had two reasons why they said there's preemption. The first was, well, it's only — the contract is only hypothetically implicated. The second was, well, even if the contract is implicated, we just have to refer to it or consult to it. There's not actually any real heavy lifting we have to do here with the contract. I would submit that if this case goes back to Judge Nielsen, there is going to be some heavy lifting that has to be done. In Section 16.6, the contract provides that if the employee is incapable of performing work functions of the job title because of a medical restriction, the company will attempt to place the employee in available work which he is capable of performing. Two key phrases there that are going to require some substantial interpretation. One is, what are the work functions of the job title? What does that mean? We're assuming that that provision would apply even if the Washington accommodation requirement was different. And the whole point of a self-standing State's cause of action is that it governs not to collect a bargaining agreement. So if, for example, the Washington law against discrimination required that something else be done than the contract requires with regard to disability, then that's what you would do. So what do you need the contract for? It is absolutely right that the Washington law against discrimination creates a standard that would obviously trump or supersede what the parties agree to in a mere contract. But we've got a couple of features, one of which is generally found in disability laws, both the Federal and the State, which is this reasonable accommodation standard. So you're looking at the reasonableness of the employer's conduct. But after Ornish, the standard at this point is that the first question is whether the particular accommodation is reasonable in the run of cases, which presumably would decide not based on any particular right circumstances, but in the run of cases, not based on the collective bargaining agreement, for example. And if you had a defense, it would be an affirmative defense that said, oh, but it's an un-conferred on us, and that might bring in the collective bargaining agreement. But under Kramer, that doesn't matter. It's defense. Well, I think it's not a – I would agree that under Kramer, the mere asserting it as an affirmative defense isn't sufficient. You're saying that the way Barnett spins it out, it is a defense. I guess I had interpreted Barnett a little bit. I'm assuming that Washington applies Barnett, but I'm assuming it would apply something like it. Yeah. I think that Barnett – I guess it goes back to whether we're talking about an affirmative defense or whether we're talking about Boeing simply trying to negate an essential element of a plaintiff's case. And although it's a little bit of an abstract distinction, I think that is actually the way the case has come down. If it's a matter of trying to negate – the plaintiff has to show reasonable accommodation. That's an affirmative part of the plaintiff's case. And if we're trying to negate that by showing, no, we didn't fail to act reasonably, we did act reasonably, and here's how, because we followed the contract, subject to this interpretation, that's different than – The contract provision you talked to is extremely general and broad, and it doesn't  shall X happen. And the employee was arguing for X. But that's not what we're looking at here. Right. We're looking at what options Boeing had. I mean, Barnett really is quite applicable here, because what the Court would be looking at is what reasonable options did Boeing have to try to place these folks somewhere else, either in Spokane or elsewhere in Boeing. And Barnett says that the reasonableness of that is going to be determined by, among other things, whether there's a seniority, you know, what other rights are out there. I guess another thing I want to mention is that Washington law is a little bit different than the ADA, which the Court may deal with more regularly, because under Washington law, we do have this regulation that says that you do need to consider other laws and contracts, even, in interpreting the undue burden part of the reasonable accommodation equation. So Washington law may be a little bit different in that regard. I want to address what I'm sure is a concern of the Court, that if this case is preempted, are we saying that all union employee cases are preempted throughout the span of the Ninth Circuit? And the answer is absolutely not. I mean, this is a – I mean, one thing that Humble said is that this is – or actually, Kramer said is that it's a very case-specific determination. We have to take each case on its particular facts and law. In this case, we have the Washington law, which has this kind of unusual feature of specifically saying that we look to other contracts and whatnot in trying to determine the employer's duties. And we have a contract that addresses these issues quite substantially. I mean, I'm not sure that there are going to be a lot of other union contracts that are going to address it this way. But here we do have the same thing. I have to – I have a hard time understanding what it is you're saying about 16 points. 16 points, then, seems essentially to be paralleling the obligations imposed by the Washington law against discrimination. If somebody has a disability, you're supposed to – if it's found to be incapable of performing the work functions, you should attempt to replace them with such available work. And that's exactly what they're asking for. So how does this limit your options in any way? Well, the question is going to be what is available work. I think that's probably the key phrase. But you're looking at this as a limitation on your options when, in fact, what it says is available work, which the opinion of the company is medically capable of performing. So essentially, this section says that the company is supposed to do what it's supposed to do. It doesn't really limit you in any way. But it may, because what is available work? What are Boeing's options to place someone somewhere else? Does available work mean a work in the Spokane plant? Does available work mean work in the whole world of Boeing? Does available work mean work that somebody else is doing right now and that Boeing has to remove them from that job and put them in it? Does available work mean an existing job classification or creating a new one? I mean, these are all questions that are going to require some interpretation. And as in Barnett, therefore, as an affirmative defense, you may be able to say that this is undue burden because it would require ousting X from his job, and that would conflict with the collective bargaining agreement. He will have to be able to litigate that, but I don't see why that leads to preemption. Well, I guess it comes down to whether in the Barnett case it was an affirmative defense or rather negating an element of the plaintiff's claim. In other words, the plaintiff says you failed to reasonably accommodate me, and the employer comes forward and says, no, our options were not unreasonable. We did not fail to act reasonably. We did act reasonably because these are the constraints we were operating under in the collective bargaining agreement. I guess I would also suggest that the court below, well, the parties below, Boeing below, moved on two grounds. Boeing moved on preemption grounds, but Boeing also moved on a complete failure of undisputed in the record the fact that each plaintiff's doctor had said that they couldn't do the job, and that Boeing then went through a quite thorough process, this medical placement review board process, to determine whether there were any other jobs that the plaintiffs could do. That's all in the record. It is as the Court is well aware within the Court's options to affirm the judgment below based on anything. Yes, Your Honor.     Otherwise, you don't have any failure and there is no preemption because if we decided that it was not preempted, the whole thing is supposed to go back to State court and we're not supposed to do anything. Well, this is where it gets tricky. If there was, you know, this is a little bit of a curveball. I have to admit today that they were withdrawing those other two claims or abandoning them. You're right. I mean, if they're abandoning those claims and there's no preemption on the Washington log and discrimination, then we're just back in State court. But if the other claims are preempted because they're tort claims that are essentially kind of in runs around the contract, the Alice Chalmers situation exactly, if that's what those other claims are, then there would be jurisdiction to address the Washington log and discrimination claim under supplemental jurisdiction and that claim should be, could be affirmed based on the undisputed facts in the record and it's all in the supplemental excerpts of the record. Okay. Right. I think we understand your arguments. Thank you very much for them. Thank you. And we'll hear a rebuttal argument at this time. Counsel? Thank you. Let me start by just clarifying that under Washington law, there's a line of cases that allows plaintiffs who have suffered, for example, disability discrimination but who for some reason end up being deemed to have failed some statutory prerequisite for that claim. Typically, it turns out the employer has too few employees or perhaps the employee turns out to be an independent contractor. Washington courts have held that that person can essentially bring the same claim as a wrongful termination in violation of public policy. Withdrawing it insofar as it's parallel. It's parallel, sort of derivative of the statute. It's pretty typical that a plaintiff would bring both claims in case there turns out to be some problem with the statutory claim, the damages are equal. So that just sheds some light on that, that issue, the relationship between those claims. But the other one is gone as a freestanding claim. The outrage, as far as I understand the record, that's correct. That's also an element of damage. Correct, correct. It's still clearly there as an element of damage, and it's recoverable under Washington law. We do come back again and again to the language in Humble, which says, page 1010, we've held that a CBA provision does not trigger preemption when it is only potentially relevant to State law claims without any guarantee that interpretation of direct reliance on the CBA terms will occur. And in looking at the contract language cited by Boeing, the first hurdle is that that language is not, cannot be cited by Boeing as a limitation on its obligation to provide a reasonable accommodation. It doesn't matter how many times they say, well, under the contract, we only need to place such employee in available work. If the State law requires Boeing to do something more than that, for example, requires Boeing to make work available, which would not otherwise be available, then Boeing has to do that to comply with State law, because Boeing. Now, they were saying something that was slightly interesting and does implicate your interest. That is, that there is in some ways a parallel between this and seniority provisions, for example, in which there are interests of other employees, I guess, in two ways. One is safety of other employees, and the other one is not bumping other employees from their jobs in order to accommodate disabled employees. So to that degree, there may be affirmative rights of other people emerging from the collective bargaining agreement that have to be taken into account. And where I can imagine it coming into account is at the remedy stage. I could imagine Boeing coming in and saying, well, we can't give this person, Ms. Lumper, the job that she seeks, because 16.6, it would impact. Well, because in an ADA case, unlike, say, in a race discrimination case, the availability of the accommodation is part of the liability issue. If there was nothing available, then there wasn't a violation. So it's conceivable that Boeing could come in in State court and try to argue, you know, what we did, everything which we reasonably do, because these other things would be an undue burden, because it would involve violating the contract rights or seniority rights. And I think what we come down to from Humble is simply, while it is conceivable, it is far from guaranteed. We have not actually seen anything in the record to make us think that Boeing would have given, for example, Ms. Lumper a job, except that it would have required a violation. But in any event, and maybe this is where we started from, whatever it is, it's not your case, it's theirs, i.e., it's a defense. And under Kramer, if it's not inhering in the plaintiff's case, it doesn't need to preempt you. Yes. And again, I am still concerned about this language in Humble that I think reads Kramer slightly more narrowly. But in any event, it is certainly not guaranteed. It is certainly not clear that a State court judge will have to. And then, of course, we have the additional hurdle, that a State court judge can read this very clear contract language and say, well, if the work's not available and there's other language that says you can't bump someone out of a job, then that's not a reasonable accommodation. That's not a hard issue of contract interpretation, at least there's nothing in this record which suggests not only that a State court judge is going to have to read the contract, refer to the contract, but actually have to wrestle with a hard issue of contract interpretation. We are so far from that in this record, I think public policy suggests, or the policy of labor relations and collective bargaining suggests that we don't want what will in fact happen, if Humble is distinguished in some way in this case, is that every State law discrimination claim will, preemption will be sought, will be argued, and Your Honors will have to then, or your colleagues will have to do a minute analysis of every word of the contract and evaluate all of Boeing's arguments about why, what I would characterize as them saying why it might become a matter of State law interpretation. And I think what the Court said in Humble is unless you can walk in and say it's at the core of this issue, there is no way, the word guarantee means unless there is no way a State court judge can decide this case without wrestling with the interpretation, a difficult interpretation of 16.6, unless there is no way a State court can resolve this case, then we're going to say it's just a potential defense. You can't use it to bring up the cause of action. So, thank you. Roberts. Thank you for your arguments. I think both sides of the argument are quite helpful. The case just argued will be submitted, and the Court's going to stand in recess for about ten minutes.
judges: Thompson, Hawkins, Berzon